UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DOCTOR CHINWE OFFOR,

                          Plaintiff,             **REPORT AND**
                                          **RECOMMENDATION**
   -against-

MERCY MEDICAL CENTER, CATHOLIC     15-CV-2219 (SJF)(SIL)
HEALTH SERVICES OF LONG ISLAND,
DOCTOR SWARNA DEVARAJAN, and
DOCTOR JOHN REILLY,

                        Defendants.
-----------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated April 20, 2015, later modified by an Amended Complaint dated May 15, 2015, and again by a Second Amended Complaint dated June 29, 2015, Doctor Chinwe Offor ("Offor" or "Plaintiff") commenced this action against Mercy Medical Center ("MMC"), Catholic Health Services of Long Island ("CHSLI"), Doctor Swarna Devarajan ("Devarajan") and Doctor John P. Reilly ("Reilly," and together with MMC, CHSLI and Devarajan, "Defendants"), alleging violations of: the Civil Rights Act of 1866, 42 U.S.C. § 1981; the New York Executive Law § 296; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); and the federal Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. § 1111 *et seq.*, as well as state law claims for libel, slander and intentional infliction of emotional distress, and seeking a declaratory judgment and injunctive and monetary relief in connection with her claims. *See* Complaint ("Compl."), Docket

Entry ("DE") [1]; Amended Complaint ("Am. Compl."), DE [15]; Second Amended Complaint ("SAC"), DE [22-17].   Presently before the Court, on referral from the Honorable Sandra J. Feuerstein for report and recommendation, are:  (i) Plaintiff's two motions to strike evidence in Defendants' summary judgment papers as inadmissible expert materials pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and Federal Rule of Evidence 702, DE [258], [263]; (ii) Plaintiff's motion for summary judgment, DE [283]; and (iii) Defendants' cross-motion for summary judgment, DE [284], pursuant to Fed. R. Civ. P. 56.  For the reasons set forth herein, the Court respectfully recommends:  (i) denying Plaintiff's motions to strike; (ii) denying Plaintiff's motion for summary judgment; and (iii) granting Defendants' cross-motion for summary judgment.

## I.    Background

### A.  <u>Relevant Facts</u>

The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements.  Except where indicated, these facts are not in dispute.[1]

MMC is a not-for-profit health care facility and a member hospital of CHSLI, a not-for-profit network of healthcare facilities on Long Island.  *See* SAC ¶¶ 2-3; Defendants' Local Rule 56.1 Statement of Undisputed Facts in Support of Their Motion for Summary Judgment ("Def. 56.1"), DE [284-2], ¶ 1.  Plaintiff is a resident

---

[1] As discussed below, Plaintiff's 56.1 Statement and 56.1 Counterstatement contain cites to evidence not in the record in some instances.  The Court ignores any facts submitted in violation of Local Civil Rule 56.1.

of New York who was a neonatal physician in MMC's Neonatal Intensive Care Unit ("NICU") from February 2000 until her termination in August 2014. *See* SAC ¶¶ 1, 15-19; Material Facts to Which There is No Genuine Issue to be Tried ("Pl. 56.1"), DE [283-17], ¶ 5; Defendants' Objections and Responses to Plaintiff's Material Facts to Which There is No Genuine Issue to be Tried ("Def. Opp. 56.1"), DE [283-80], at 1.[2] While Plaintiff maintains CHSLI, MMC's parent company, also acted as her employer, Defendants dispute that CHSLI ever employed Offor. *See* Pl. 56.1 ¶ 5; Def. Opp. 56.1 at 3. Devarajan has been the Chairwoman of the Department of Pediatrics and the Director of Neonatology and Newborn Services at MMC since 1999, and directly supervised Plaintiff during her employment. *See* Def. 56.1 ¶¶ 4-5. Reilly was the Director of Medicine at MMC from 2007 until 2017, and the Chief Medical Officer at MMC from 2008 until 2017. *See id.* ¶ 3.

     *i.   Plaintiff's Request for Vacation Time in December 2012*

In 2010, Devarajan established a policy for all NICU physicians, including Plaintiff, under which every request for vacation had to be submitted in writing. *See id.* ¶ 9. In 2012, Offor was one of three full-time physicians in MMC's NICU, along with Devarajan and Doctor Niti Rayjada ("Rayjada"), who was scheduled to be out of work for at least 12 weeks for maternity leave starting in December 2012. *See id.* ¶¶ 10-11. Accordingly, on July 17, 2012, Devarajan limited the remaining NICU physicians' ability to take vacation between late 2012 and early 2013. *See id.* ¶ 12;

---

[2] Defendants' objections and responses to Plaintiff's 56.1 Statement are not contained in numbered paragraphs. As such, all citations to Defendants' 56.1 Counterstatement are to page numbers.

Plaintiff's Counter Statement of Undisputed Material Facts ("Pl. Opp. 56.1"), DE [285-2], ¶ 13.

According to Defendants, on July 10, 2012, Plaintiff requested time off in December 2012 to attend her niece's wedding, which Devarajan denied, citing the hold on vacations at that time. *See id*. ¶ 13; Def. 56.1 ¶¶ 13-15. Plaintiff, in turn, emailed Reilly and MMC's Vice President of Human Resources, Allison Cianciotto ("Cianciotto"), about the request, and met with both on August 1, 2012 and Cancitotto alone on September 25, 2012. At this meeting, Cancitotto explained to Plaintiff that Devarajan denied her request due to staffing concerns surrounding Rayjada's anticipated maternity leave. *See* Def. 56.1 ¶¶ 17-20.

   *ii.   Plaintiff's Request for Vacation Time in January and February 2013*

In 2012, Plaintiff's daughter was 29 years old, living in Chicago and expecting to give birth in January 2013. *See id*. ¶¶ 22, 24-25. Offor mentioned the possibility of taking vacation for her grandchild's birth to Devarajan in June 2012, but did not submit a request for vacation in writing at that time. *See id*. ¶¶ 26-27. On September 27, 2012, after receiving the 2013 Neonatology Service Schedule confirming that no vacations would be approved or scheduled until June 2013 due to Rayjada's maternity leave, Plaintiff requested to take vacation time in both February and June 2013, which Devarajan also denied. *See id*. ¶¶ 31-33, 35. While Offor maintains her daughter suffered from serious health conditions during and after her pregnancy, and that Plaintiff was aware of them at the time she requested the vacation based on "oral[]" conversations, she did not inform Devarajan of any then-current or

4

anticipated health issues, disabilities or medical needs her daughter had, or any possibility that her daughter would not be able to care for herself after labor, stating on September 28, 2012 only that she "need[ed] the vacation in February [2013] because [her] second daughter [wa]s due to deliver her first baby and she will need [her]." *See id.* ¶¶ 37-40, 43; Pl. 56.1 ¶¶ 25, 28; Pl. Opp. 56.1 ¶¶ 26-27, 43, 48, 50.

In November 2012, Offor retained Joel Greenberg, Esq. ("Greenberg") as her attorney to assist her with obtaining approval for a February 2013 vacation. *See* Def. 56.1 ¶ 50. Greenberg communicated to Defendants that Plaintiff retained him because she wanted to take vacation to be with her daughter when she gave birth. *See id.* ¶ 52. On December 27, 2012, Devarajan approved Plaintiff's request for vacation time in February 2013. *See id.* ¶ 55.

### iii.    *2012 Reports on and Evaluations of Plaintiff's Skills*

On August 14, 2012, Doctor Robert Koppel ("Koppel"), then-Director of the Regional Perinatal Center at Cohen Children's Medical Center ("Cohen Children's"), contacted Devarajan regarding Plaintiff's clinical management of a newborn infant transferred from MMC to Cohen Children's, which Plaintiff maintains never occurred. *See id.* ¶ 61; Pl. Opp. 56.1 ¶ 62. The next day, Devarajan met with Plaintiff to discuss the issues Koppel raised, and memorialized the meeting in a handwritten note to file, a document Plaintiff asserts was fabricated. *See id.* ¶ 63; October 28, 2020 Declaration of Justin A. Guilfoyle, Esq. in Support of Defendants' Motion for Summary Judgment ("Guilfoyle Dec."), DE [284-1], Exhibit ("Ex.") X, DE [284-29].

5

Based on Koppel's concerns, along with an internal alert as to Plaintiff's treatment of the same patient through an electronic incident reporting system ("MIDAS"), MMC conducted an internal review of the patient's case. *See* Def. 56.1 ¶ 64. The MIDAS report generated as part of MMC's internal review, which Plaintiff also maintains was fabricated, identified educational and performance deficits and inappropriate use of equipment in connection with Plaintiff's treatment of the patient, which Reilly met with Plaintiff to discuss on August 24, 2012. *See id.* ¶¶ 65-68; Pl. Opp. 56.1 ¶ 65.

Following its internal review, MMC initiated an external review process of three additional patients Plaintiff treated by three practitioners at institutions unaffiliated with MMC or CHSLI: (1) Cohen Children's; (2) Stony Brook Long Island Children's Hospital ("Stony Brook"); and (3) Morgan Stanley Children's Hospital ("Morgan Stanley"). *See* Def. 56.1 ¶¶ 69-73. All three reports, which Plaintiff also maintains were fabricated, noted deficiencies in Offor's treatment of patients and recommended the need for further review and discussion as to improving her practices in six areas. *See id.* ¶¶ 74-79; Guilfoyle Dec. Exs. AA, DE [284-32], BB, DE [284-33]; Pl. Opp. 56.1 ¶¶ 74-77.

Other MMC personnel raised additional concerns as to Plaintiff's medical care in the NICU. *See* Def. 56.1 ¶¶ 80-82. In response, Reilly held a NICU department meeting on December 17, 2012 as to certain policies Offor was responsible for abiding by, which Defendants assert Plaintiff continued to fail to comprehend. *See id.* ¶¶ 83-86.

iv.    *MMC Places Plaintiff on a Focused Practitioner Performance Evaluation*

Plaintiff met with Reilly, Devarajan and MMC's Director of Risk Management, Rosemarie Povinelli ("Povinelli"), on December 27, 2012, at which time Reilly informed Offor that MMC decided to place her on a three-month Focused Practitioner Performance Evaluation ("FPPE"), a process through which MMC's medical staff evaluates the competence of a practitioner following failures, shortcomings or needs for improvement in connection with the practitioner's clinical skills or knowledge, based on Koppel's concerns, the MIDAS report and the three independent evaluations, after which MMC would reevaluate her work and determine what additional steps, if any, were appropriate. *See id.* ¶¶ 87-90. Three months later, MMC concluded that there was not a sufficient volume of cases involving the specific issues that needed review to adequately evaluate Offor's clinical skills and issues, and informed her in a May 8, 2013 letter that it would continue the FPPE to provide additional time to evaluate her abilities. *See id.* ¶¶ 93-95; Guilfoyle Dec. Ex. DD, DE [284-35].

Defendants noted that Plaintiff exhibited additional performance and behavioral issues throughout her time on the FPPE. *See, e.g.*, Def. 56.1 ¶¶ 98-119; Pl. Opp. 56.1 ¶¶ 101-17. On several occasions, Defendants addressed their concerns in meetings with Offor and memorialized the complaints and concerns raised, as well as meetings held, in written letters and notes to file, all of which Plaintiff maintains were forged or otherwise altered. *See, e.g.*, Def. 56.1 ¶¶ 107-10, 116-19; Guilfoyle Dec. Ex. HH, DE [284-39]; Pl. Opp. 56.1 ¶¶ 109, 117-19.

In November 2013, Offor demanded that MMC take her off the FPPE. *See* Def. 56.1 ¶¶ 120-21. On December 6, 2013, Devarajan notified Plaintiff that MMC intended to continue the FPPE because Plaintiff's recent conduct demonstrated a lack of professionalism and respect, as well as a failure to adhere to departmental guidelines for patient management. *See id.* ¶¶ 125-26.

v.     *MMC's Initial Disciplinary Actions Against Plaintiff*

After continuing Plaintiff's FPPE a second time, Defendants removed Offor's title of "Assistant Director of Neonatology" and warned of further disciplinary action, based on her continuing behavioral and clinical issues, along with the fact that she failed to maintain "Instructor" status in the Neonatal Resuscitation Program, which Plaintiff denies. *See id.* ¶¶ 127-32; Pl. Opp. 56.1 ¶¶ 127-28. Offor emailed several MMC employees regarding the removal of her title, and had several meetings with MMC superiors about this action and the events that preceded it, all of whom agreed with Devarajan's decision to continue her FPPE and remove her title, and advised Plaintiff to work on meeting MMC's expectations for neonatologists, warning that continued issues would result in further discipline. *See* Def. 56.1 ¶¶ 133-36, 139, 141-46. The superiors documented these meetings and discussions in notes to file, which Offor also claims were forged or otherwise altered. *See id.* ¶ 138, 143-46; Guilfoyle Dec. Ex. RR, DE [284-49]; Pl. Opp. 56.1 ¶¶ 136-37.

vi.     *2014 Reviews of Plaintiff's Performance*

At MMC's Department of Neonatology Peer Review meeting on June 17, 2014, the eleven individuals present reviewed two of Plaintiff's cases referred to the

committee based on concerns regarding Plaintiff's care, which she maintains were fabricated. *See* Def. 56.1 ¶¶ 151-52; Pl. Opp. 56.1 ¶¶ 151-54. The two reviews determined that Offor failed to meet the appropriate standard of care, and that there were opportunities for Plaintiff to improve. *See* Def. 56.1 ¶¶ 153-54.

Doctor Yang Kim ("Kim"), described by Defendants as then-Medical Director of the Bellevue NICU and an Assistant Professor of Pediatrics at the New York University School of Medicine in 2014, performed an external quality assurance review of seven of Plaintiff's cases upon MMC's request. *See id.* ¶¶ 155-56. Of the seven cases reviewed, Kim identified questionable points of management and departures from the normal standard of care with respect to Plaintiff's treatment in five cases. *See id.* ¶ 158.

### vii.    MMC Terminates Plaintiff

On August 21, 2014, Plaintiff met with Doctor Alan Guerci, the Chief Executive Officer of MMC and CHSLI, as well as Doctor Aaron Glatt, the then-Executive Vice President and Chief Administrative Officer of MMC, and Anthony Pellicano, Senior Vice President and Chief Human Resources Officer, who informed her that her employment with MMC was terminated and her clinical privileges at MMC were summarily suspended as a result of her standard of care issues, unprofessionalism, lack of respect, insubordination, failure to improve and failure to adhere to departmental policies, procedures and guidelines. *See id.* ¶¶ 166-68.

MMC's bylaws provide that a physician whose medical staff privileges have been suspended has the right and opportunity to formally challenge such action and

"request a formal hearing before an ad hoc committee comprised of members of the attending medical staff" within 30 days of receiving a termination notice. *See id.* ¶¶ 172-73; Guilfoyle Dec. Ex. WW, DE [284-54].   Plaintiff did not challenge her suspension, and on November 24, 2014, MMC terminated Plaintiff's clinical privileges and notified her of the termination. *See* Def. 56.1 ¶¶ 174-75.

> ### viii. *New York State Department of Health, Office of Professional Medical Conduct Proceedings*

In accordance with its statutory obligations, MMC reported Plaintiff's termination to the New York State Department of Health, Office of Professional Medical Conduct ("OPMC") on September 2, 2014, which in turn commenced an investigation into the termination. *See id.* ¶¶ 176-77.  As part of that investigation, the OPMC hired an independent expert, Doctor Jesus Jaile-Marti ("Jaile-Marti"), then-Director of Neonatology at White Plains Hospital, to review the medical records of patients Offor treated. *See id.* ¶ 178.  Jaile-Marti reviewed five of Plaintiff's cases from her tenure at MMC and provided the OPMC with a written report noting deviations from the generally accepted medical standards of care in four of them. *See id.* ¶¶ 180-81.

As a result of Jaile-Marti's findings, the OPMC brought charges against Plaintiff and conducted a hearing for which Offor retained counsel. *See id.* ¶¶ 182-83.  No one from MMC or CHSLI participated in the hearing as a witness or panel member, and Jaile-Marti testified. *See id.* ¶¶ 184-86.  After the hearing, the OPMC issued a decision revoking Plaintiff's license to practice law in New York, citing a lack of awareness and understanding of her repeated and significant failures to meet

acceptable standards of care, as well as her lack of remorse and refusal to accept responsibility for her actions. *See id*. ¶¶ 188-89; Guilfoyle Dec. Ex. CCC, DE [284-60].   The New York State Appellate Division, Third Department, annulled the OPMC's decision to revoke Plaintiff's medical license on June 8, 2020 due to the administrative law judge's failure to accept Offor's answer before the hearing but after the deadline to submit an answer, and remitted the matter to the OPMC for further proceedings. *See Matter of Offor v. Zucker*, 185 A.D.3d 1187, 1190, 127 N.Y.S. 3d 195,197-98. (3d Dep't 2020).  According to Plaintiff, her medical license has not yet been reissued.  *See* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp."), DE [285], at 29.

### B. Procedural History

On February 22, 2014, Plaintiff filed a charge of discrimination against MMC with the Equal Employment Opportunity Commission ("EEOC"), alleging claims of race and color discrimination and retaliation in violation of Title VII.  *See* Guilfoyle Dec. ¶ 3; Ex. A, DE [284-6].  Offor filed an amended charge on August 29, 2014, adding CHSLI as a respondent and claiming that MMC and CHSLI terminated her employment based on race and color discrimination and in retaliation for filing her initial charge. *See* Guilfoyle Dec. ¶ 4; Ex. B, DE [284-7].  The EEOC issued Plaintiff a Notice of Right to Sue on February 27, 2015.  *See* Guilfoyle Dec. ¶ 5; Ex. C, DE [284-8].

Based on the above, Plaintiff commenced this action on April 20, 2015.  *See* Compl.  The Complaint and Amended Complaint – seeking declaratory and injunctive

relief and monetary damages – allege that Defendants discriminated against her on the basis of her race and national origin and retaliated against her for requesting vacation and hiring an attorney, by placing her on an FPPE, denying her vacation in violation of the FMLA and making false negative statements as to her employment performance. *See generally* Compl.; Am. Compl.

Defendants filed their motion to dismiss the Amended Complaint on June 17, 2015, *see* DE [19], and on June 29, 2015, Plaintiff filed a motion for leave to amend the Complaint and file the Proposed Second Amended Complaint, which added claims for violation of due process under the HCQIA and for a hostile work environment under Title VII. *See* DE [22], [22-17]. The parties also filed cross-motions for sanctions in September 2015 – Defendants moved for sanctions against Plaintiff and her counsel on the grounds that they intentionally failed to redact medical and other sensitive information from publicly filed documents in violation of the Health Insurance Portability and Accountability Act of 1996 and Fed. R. Civ. P. 5.2, *see* DE [32], and Plaintiff moved for sanctions against Defendants and their counsel on the grounds that they colluded with the EEOC to force Plaintiff to initiate a lawsuit against the EEOC prior to obtaining a copy of her EEOC charge file. *See* DE [36].

On March 10, 2016, the Honorable Arthur D. Spatt granted Defendants' motion to dismiss the Amended Complaint in its entirety and with prejudice, denied Plaintiff's motion to file a Second Amended Complaint as futile, and reserved decision as to the sanctions motions. S*ee* DE [43]. Plaintiff appealed Judge Spatt's decision on March 18, 2016. *See* DE [46]. While the appeal was pending, Judge Spatt granted

Defendants' motion for sanctions against Plaintiff and her counsel and denied Plaintiff's motion for sanctions on June 25, 2016.  *See* DE [47].  By order dated November 20, 2018, Judge Spatt directed Plaintiff's counsel to pay Defendants $25,622.50.  *See* DE [109].

The Second Circuit affirmed Judge Spatt's dismissal of all causes of action except for Plaintiff's FMLA retaliation claim, reinstated jurisdiction over the state law claims, s*ee* DE [55], and subsequently ordered that the SAC is the operative complaint.  *See* DE [64].  Defendants moved to dismiss the SAC's state law claims, *see* DE [58], which Judge Spatt granted on October 28, 2017 pursuant to Fed. R. Civ. P. 41(a)(1)(A), leaving Plaintiff's FMLA retaliation claim as the only remaining cause of action.  *See* DE [65].  Thereafter, the parties conducted discovery.

Plaintiff filed a letter motion to strike portions of Defendants' affidavits, briefs and exhibits in support of their motion for summary judgment on November 30, 2020, and a second letter motion to strike portions of Defendants' affidavits, briefs and exhibits in opposition to Plaintiff's motion for summary judgment on December 4, 2020, both of which Defendants oppose.  *See* DE [258], [261], [263], [272].  On December 15, 2020, Judge Feuerstein limited these motions to Plaintiff's challenges to documents she asserts are inadmissible expert materials, and directed Plaintiff to include any challenges as to forged, fabricated or otherwise inadmissible documents in her summary judgment papers.  *See* DE [276].

On January 21, 2021, the parties filed cross-motions for summary judgment. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment

("Pl. Mem."), DE [283-18]; Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def. Mem."), DE [284-5]. Each party opposes the other's motion. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp."), DE [283-81]; Pl. Opp. Judge Feuerstein referred Plaintiff's two motions to strike, as limited in her December 15, 2020 Order, and the cross-motions for summary judgment to this Court for report and recommendation. *See* January 22, 2021 Order Referring Motions.

## II.  Legal Standards

### A.  <u>Motion to Strike Summary Judgment Materials</u>

"[E]vidence considered on summary judgment must generally be admissible." *See LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). On summary judgment, "a district court has wide discretion" in determining the admission of evidence. *Id.* (internal quotation marks and citations omitted). Federal Rule of Civil Procedure 56(c)(2) permits a party, on summary judgment, to object to inadmissible evidence.[3] *See* Fed. R. Civ. P. 56(c)(2); *Codename Enterprises, Inc. v. Fremantlemedia N. Am., Inc.*, 16 CIV 1267, 2018 WL 3407709, at *2 (S.D.N.Y. Jan. 12, 2018). Federal Rule of Evidence 702(a) requires that a proposed expert witness be qualified on the basis of "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."

---

[3] While Plaintiff purports to make her motions to strike pursuant to Fed. R. Civ. P. 56(e), she cites to the standard set forth in Fed. R. Civ. P. 56(c). Accordingly, the Court analyzes the motions to strike under Fed. R. Civ. P. 56(c).

## B. **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted) (emphasis in original); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is

considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III. Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends:  (i) denying Plaintiff's motions to strike; (ii) denying Plaintiff's motion for summary judgment; and (iii) granting Defendants' cross-motion for summary judgment.

### A. Motion to Strike

Plaintiff argues that five of Defendants' exhibits constitute improper expert reports:  (i) Exhibit AA, which is Cohen Children's external review of Plaintiff's treatment of a patient at MMC; (ii) Exhibit AAA, the report of the independent physician the OPMC retained; (iii) Exhibit BB, Stony Brook's external review of Plaintiff's treatment of a patient at MMC; (iv) Exhibit Y, which is Reilly's January 16, 2013 letter to Plaintiff discussing a meeting he held with Plaintiff, Devarajan and Povinelli during which they discussed the concerns with Plaintiff's clinical management Koppel raised; and (v) Exhibit VV, Kim's external quality assurance

review of Plaintiff's treatment of seven patients at MMC.  *See* DE [258], [261], [263], [272].

Defendants did not submit any of these documents as expert reports.  Rather, these are documents created prior to Plaintiff's termination and relied upon as documents submitted into the record in the course of fact discovery as events leading to Offor's discharge.  The parties never exchanged any actual expert reports.  *See* DE [261] at 2.  Moreover, the Court does not rely on any of these documents in reaching its conclusion on the arguments for summary judgment.  Accordingly, the Court denies Plaintiff's motions to strike these documents as improper expert testimony.

## A. **Summary Judgment**

### i. *Procedural Defects*

#### a. Plaintiff's Rule 56.1 Statement and Counterstatement

There are several defects in Plaintiff's motion papers, both with respect to her Local Civil Rule 56.1 statements and her memoranda of law.  Specifically, Plaintiff fails to cite to evidence in the record to support some of her assertions, and certain facts contained within her statements amount to legal arguments.

According to the Second Circuit, "a district court has broad discretion to determine whether to overlook a party's failure to comply with" Local Rule 56.1.  *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 432 (S.D.N.Y. 2014).  Therefore, "'[w]hile the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.'"  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (quoting *Downes v. Beach*, 587 F.2d 469, 472

(10th Cir. 1978)).  As for the requirement that the party cite to "evidence" for each contention in its Rule 56.1 Statement, the court is permitted to rely solely on the materials that the party cites in deciding whether the party has carried its burden. *See, e.g., 24/7 Records, Inc. v. Sony Music Enter., Inc.*, 429 F.3d 39, 46 (2d Cir. 2005) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements.")).

Fed. R. Civ. P. 56(c) requires that each fact asserted in a Rule 56.1 statement must be followed by citation to evidence that would be admissible.  *See also Pape v. Dircksen & Talleyrand Inc.*, No. 16 CV 5377, 2019 WL 1435882, at *1 (E.D.N.Y. Feb. 1, 2019), *report and recommendation adopted*, No. 16 CV 05377, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019); *Feldman v. Sanders Legal Grp.*, 914 F. Supp. 2d 595, 596 n.2 (S.D.N.Y. 2012) ("Each of the parties' respective statements of material fact must be supported by a citation to admissible evidence in the record.").  "[T]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."  *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (quoting *Holtz*, 258 F.3d at 74).  Further, courts within the Second Circuit have declined to consider facts within Rule 56.1 statements that contain legal arguments and conclusions.  *See, e.g., Labarbera v. NYU Winthrop Hosp.*, No. 218 CV 6737, 2021 WL 980873, at *8 (E.D.N.Y. Mar. 16, 2021).

Both Plaintiff's Rule 56.1 Statement and Counterstatement contain factual assertions supported by citations to documents not contained within the record, or that amount to legal arguments. *See, e.g.,* Pl. 56.1 ¶¶ 1, 3, 4, 6, 9, 11; January 6, 2021 Affirmation of Ike Agwuegbo in Opposition to Defendants' Motion for Summary Judgment, DE [285-1], Exs. 16, 23, 53, 78, 81, 82, 84 (as cited in Pl. Opp. 56.1). Accordingly, the Court declines to consider those facts contained in these paragraphs of Plaintiff's 56.1 statements.

As to Plaintiff's Rule 56.1 counterstatement, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F.Supp.2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs*. PTE Ltd., 262 F.Supp.2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73 (citations omitted); *see also Gilani v. GNOC Corp*., No. 04 Civ. 2935, 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its discretion, the Court will deem admitted only those facts in Defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F.Supp.2d at 504-05.

b. Plaintiff's Memoranda of Law

Plaintiff's memoranda of law violate Local Civil Rule 11.1(b), which sets forth minimum standards for the legibility of documents filed in this District, including the requirement that all documents be "double-spaced, except for headings, text in footnotes, or block quotations" and "have at least one-inch margins on all sides."

Although the Court declines to deny Plaintiff's motion, or grant Defendants' motion, solely on this basis, the Court advises Plaintiff's counsel to abide by the formatting requirements of the Local Civil Rules in future filings with this Court, as Judge Spatt did in a previous action involving Offor. *See Offor v. Equal Emp. Opportunity Comm'n*, No. 15 CV3175, 2016 WL 3747593, at *2 (E.D.N.Y. July 11, 2016), *aff'd sub nom. Offor v. United States Equal Emp. Opportunity Comm'n*, 687 F. App'x 13 (2d Cir. 2017); *see also P.G. ex rel. D.G. v. City Sch. Dist. of New York*, No. 14 CIV. 1207, 2015 WL 787008, at *1 n.2 (S.D.N.Y. Feb. 25, 2015) ("[I]t is clear that Plaintiffs' counsel abused the page limit and violated the Local Rules by reducing the line spacing to slightly less than double-spaced. This meant that rather than having 23 lines per page, Plaintiffs['] had 27 lines per page. In so doing, Plaintiffs' counsel accorded themselves approximately 200 extra lines of text, or over 8.5 extra pages, onto an already-enlarged page limit. Such amateurish tricks are inappropriate for college term papers; they certainly have no place in federal court.").

ii.     *Plaintiff's FMLA Retaliation Claim*

Both parties cross-move for summary judgment on Plaintiff's sole remaining claim for FMLA retaliation.  As set forth below, the Court recommends granting Defendants' motion and denying Plaintiff's motion.

The FMLA grants eligible employees the right "to a total of 12 workweeks of leave during any 12–month period . . . to care for [a] spouse, or a son, daughter, or parent" who "has a serious health condition."   29 U.S.C. § 2612(a)(1)(C); *see Geromanos v. Columbia Univ.*, 322 F.Supp.2d 420, 426 (S.D.N.Y. 2004).  At the end of FMLA leave, the employee is entitled to reinstatement to her former position or an equivalent.  29 U.S.C. § 2614(a)(2) ("The taking of [FMLA] leave . . . shall not result in the loss of any employment benefit accrued prior to" leave.).

Section 2615(a)(1) of the FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  The regulations promulgated pursuant to the FMLA explain that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave," 29 C.F.R. § 825.220(b), and that an employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." *See* 29 C.F.R. § 825.220(c).

A plaintiff may advance a cognizable claim for FMLA violations pursuant to 29 U.S.C. § 2615(a) under two distinct theories:  "interference" and "retaliation."  *See Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir.2004).  Here, Plaintiff alleges

a retaliation claim.  As with other anti-discrimination causes of action, an FMLA retaliation claim is analyzed under the *McDonnell Douglas* three-step burden shifting framework.  *See Roberts v. Health Ass'n*, 308 Fed.Appx. 568, 570 (2d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)).

To prevail on an FMLA retaliation claim, the complaint must plead facts plausible to establish that:  (1) plaintiff exercised rights protected under the FMLA; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *Potenza*, 365 F.3d at 168.  Assuming that a plaintiff has pled sufficient facts to satisfy the first three prongs of a prima facie retaliation claim, where a plaintiff fails to establish a "causal connection between the protected activity and the adverse employment action" the claim fails.  *Perry v. NYSARC, Inc.*, 424 Fed.Appx. 23, 26 (2d Cir. 2011) (quoting *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)); *Potenza*, 365 F.3d at 168.

Retaliatory intent or a causal nexus between the protected activity and the adverse employment action can be established:  (i) indirectly through a showing that the protected activity was followed closely by discriminatory treatment, commonly known as "temporal proximity"; (ii) indirectly through other evidence such as disparate treatment of similarly-situated employees; or (iii) directly through a showing of evidence of retaliatory animus toward plaintiff by defendant.  *Carr v. WestLB Admin., Inc.*, 171 F.Supp.2d 302, 309 (S.D.N.Y.2001) (citing *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)).  The burden then

shifts to the defendant to state a legitimate, non-discriminatory reason for the adverse employment action. *See Tomici v. N.Y.C. Dep't of Educ.*, 910 F.Supp.2d 472, 490 (E.D.N.Y. 2012) (citing *Farias v. Instructional Sys.*, 259 F.3d 91, 98 (2d Cir. 2001)). "The employer's burden is merely one of production, not persuasion." *Id.* (internal quotation marks and citations omitted). If the defendant meets its burden of production, the burden shifts back to the plaintiff "to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination." *Id.* (internal quotation marks and citations omitted).

The parties do not dispute that Plaintiff was qualified for her position at MMC or that she experienced an adverse employment action. As such, the Court analyzes only whether Offor exercised her rights under the FMLA, and whether the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. The Court concludes that Plaintiff fails to prove that she exercised her rights protected by the FMLA and, on this basis, recommends granting Defendants' motion for summary judgment.

a. Whether Plaintiff Exercised Her Rights Protected Under the FMLA

Plaintiff did not provide sufficient notice to Defendants that she was or may have been entitled to FMLA leave to visit her adult daughter, and therefore did not exercise rights protected under the FMLA.

Courts in the Second Circuit have held that proving entitlement to FMLA leave is a necessary prerequisite to a valid retaliation claim. *See, e.g., Higgins v. NYP Holdings, Inc.*, No. 10 Civ. 8217, 836 F.Supp.2d 182, 194–95, 2011 WL 6083702, at

*10 (S.D.N.Y. Dec. 7, 2011); *Milne v. Navigant Consulting*, No. 08 Civ. 8964, 2010 WL 4456853, at *10 n.19 (S.D.N.Y. Oct. 27, 2010) ("It appears clear that in order for a plaintiff to 'exercise rights protected under the FMLA,' the plaintiff must demonstrate she actually has a valid claim to FMLA benefits."); *Lee v. Heritage Health & Hous., Inc.*, No. 07 Civ. 10628, 2009 WL 3154314, at *14 n.14 (S.D.N.Y. Sept. 30, 2009) ("If Plaintiff cannot show that she had a serious health condition, entitling her to FMLA leave, then, *a fortiori*, she cannot show that she was retaliated against for exercising rights that were, in fact, protected by the Act.") (emphasis in original); *Brown v. The Pension Boards*, 488 F.Supp.2d 395, 410 (S.D.N.Y.2007) (retaliation claim failed because employee "did not enjoy FMLA protection").

A plaintiff need not *explicitly* request time off pursuant to the FMLA to put an employer on notice that she may be entitled to FMLA leave, but must provide sufficient notice to make her employer aware that she may need leave protected by the statute. According to the regulation concerning notice:

> An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include . . . whether the employee or the employee's family member is under the continuing care of a health care provider . . . or if the leave is for a family member that the condition renders the family member unable to perform daily activities. . . . When an employee seeks leave for the first time for a[n] FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. . . . The employer will be expected to obtain any additional required information through informal means.

29 C.F.R. §§ 825.303(b); *see also id.* § 825.302(c) (with respect to foreseeable needs, "the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought"); *id.* § 825.300(b)(1) ("[W]hen

the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances.").

Accordingly, if an eligible employee provides sufficient information for the employer to reasonably determine that the requested leave *may* qualify for FMLA protection, the employer *must* specify whether, and what, additional information is required for a determination of whether the employee is entitled to such leave. *See Coutard v. Mun. Credit Union*, 848 F.3d 102, 110–11 (2d Cir. 2017) ("[A]n employee need only provide the employer with sufficient information to understand that the circumstances indicate that the FMLA 'may' apply. . . .The employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee *may* be in need of FMLA leave.") (emphasis in original).

As the only type of FMLA leave relevant to Plaintiff, the FMLA entitles an eligible employee to take leave to "care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). "Son or daughter" is defined to include only children under 18 years of age or those over 18 who are incapable of self-care because of a mental or physical disability. *See* 29 U.S.C. § 2611(12)(A)-(B).

Plaintiff did not provide Defendants with notice that she was in any way entitled to FMLA leave when she requested vacation to be with her adult daughter for the birth of her grandchild. As her daughter was over 18, Offor was required to inform Defendants that her daughter was unable to care for herself because of a

mental or physical handicap in order to be entitled to FMLA leave.  Instead, the parties do not dispute that Offor and her attorney repeatedly requested <u>vacation</u> time to "visit" her daughter and be with her during her childbirth.  *See* October 28, 2020 Declaration of Swarna Devarajan, M.D. in Support of Defendants' Motion for Summary Judgment, DE [284-3], ¶¶ 18, 20, 27, 29; December 5, 2019 Deposition of Doctor Chinwe Offor ("Offor Tr."), Guilfoyle Dec. Ex. D, DE [284-9], at 124-39, 151-55; Guilfoyle Dec. Ex. T, DE [284-25].  Offor requested the vacation because her "second daughter is due to deliver her first baby and she will need [her]."  She never identified any health concerns with this request, and while her daughter may have had health conditions related to her pregnancy, Offor never claimed or made any statement in her request indicating that her daughter suffered from a physical or mental handicap, or any other health problems, which would trigger Defendants' obligation to request further information.  *See* Offor Tr. at 124-39, 151-55; *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1384–86 (11th Cir. 2005) ("[Plaintiff] did not provide [Defendant] with [FMLA] notice, but merely expressed her desire to assist her adult daughter during the birth of her grandchild, a condition which the FMLA does not cover.").  Accordingly, Plaintiff was not entitled to FMLA leave, and in turn did not exercise any rights under the statute, and there are no circumstances giving rise to an inference of unlawful retaliatory intent.  As a result, summary judgment in Defendants' favor is appropriate.[4]

---

[4] In reaching this conclusion, the Court notes that Plaintiff challenges the authenticity and veracity of several documents Defendants cite in their papers regarding MMC policies, instances of Offor's behavioral and clinical shortcomings and meetings Defendants held with Plaintiff as to complaints and issues raised.  *See* Pl. Mem. at 26-28.  As the Court concludes that Plaintiff was not eligible for

Based on the foregoing analysis, the Court recommends that summary judgment in Defendants' favor be granted, and that Plaintiff's cross-motion for summary judgment be denied.

## IV.    Conclusion

For the reasons set forth above, the Court respectfully recommends:  (i) denying Plaintiff's motions to strike; (ii) granting Defendant's motion for summary judgment; and (iii) denying Plaintiff's motion for summary judgment.

## V.    Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            May 11, 2020                      /s/ Steven I. Locke
                                             STEVEN I. LOCKE
                                             United States Magistrate Judge

---

FMLA leave and therefore never exercised her rights under the statute, it declines to address these arguments.