UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DOCTOR CHINWE OFFOR,

<table>
<tr><td style="padding-left:6em">Plaintiff,</td><td><b>ORDER ADOPTING REPORT<br>AND RECOMMENDATION</b></td></tr>
</table>

- against -                                    2:15-cv-2219 (DRH) (SIL)

MERCY MEDICAL CENTER, CATHOLIC
HEALTH SERVICES OF LONG ISLAND,
DOCTOR SWARNA DEVARAJAN, and
DOCTOR JOHN REILLY

                              Defendants.
-------------------------------------------------------------X

**APPEARANCES**

**IKE AGWUEGBO & CO. P.C.**
Attorney for Plaintiff
575 Lexington Avenue, 4th Floor
New York, NY 10022
By:     Ike Agwuegbo, Esq.

**NIXON PEABODY LLP**
Attorneys for Defendants
50 Jericho Quadrangle, Suite 300
Jericho, NY 11753-2728
By:     Tara Eyer Daub, Esq.
        Aaron F. Nadich, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Presently before the Court is the Report and Recommendation of Magistrate

Judge Steven I. Locke, dated May 11, 2021 (the "R&R") [DE 304], recommending that

the Court (i) deny Plaintiff Dr. Chinwe Offor's motions to strike evidence in the

captioned Defendants'[1] summary judgment papers as inadmissible expert materials, (ii) deny Plaintiff's motion for summary judgment, and (iii) grant Defendants' cross-motion for summary judgment.   Plaintiff filed objections pursuant to Federal Rule of Civil Procedure 72 on May 18, 2021, to which Defendants responded on June 1, 2021.   For the reasons stated below, Plaintiff's objections are overruled and the R&R is adopted in full.   Plaintiff's Motion to Strike and Motion for Summary Judgment are both denied, and Defendants' Motion for Summary Judgment is granted.

## BACKGROUND

The Court adopts the R&R's detailed Background Section, R&R at 2–14, over Plaintiff's objections, *see infra* Discussion Section II (overruling the objections raised at pages 15 through 27 in Plaintiff's Objections to the Report and Recommendations ("Obj.") [DE 305]).   The Background section in this Order contains only the information necessary to understand the basis for Judge Locke's recommendations and the objections thereto.

### A.     Relevant Facts

MMC, a nonprofit hospital member of CHSLI, employed Plaintiff as a full-time neonatologist between 2000 and 2014.   R&R at 2–3.   As of 2012, there were only three full-time neonatologists at MMC: Plaintiff, Dr. Niti Rayjada, and the Chairwoman of

---

[1]     The captioned Defendants are: Mercy Medical Center ("MMC"), Catholic Health Services of Long Island ("CHSLI"), Doctor Swarna Devarajan ("Dr. Devarajan") and Doctor John P. Reilly ("Dr. Reilly," and together with MMC, CHSLI and Dr. Devarajan, "Defendants").

the Department of Pediatrics and the Director of Neonatology and Newborn Services Dr. Swarna Devarajan. *Id.* at 3. Dr. Rayjada was scheduled for a twelve-week maternity leave following the anticipated birth of her child in December 2012. *Id.*

In June 2012, Plaintiff voiced to Dr. Devarajan the possibility of taking vacation in late January 2013 – when Plaintiff's twenty-nine-year-old daughter, who lived in Chicago, expected to give birth to her first child. *Id.* at 3–4. As stated in the R&R, Plaintiff "maintains her daughter suffered from serious health conditions during and after her pregnancy" but "did not inform [Dr.] Devarajan of any then-current or anticipated health issues, disabilities or medical needs her daughter had, or any possibility that her daughter would not be able to care for herself after labor." *Id.* at 4–5. Dr. Devarajan did not take any action with respect to Plaintiff's comments; MMC's policy since 2010 required neonatologists to request vacation time in writing. *Id.* at 3–5; *see* Defs. Local Rule 56.1 Statement ¶¶ 26–30 ("Defs. 56.1") [DE 284-2]. In July 2012, Dr. Devarajan limited the remaining neonatology "physicians' ability to take vacation between late 2012 and early 2013," in light of Dr. Rayjada's expected absence. R&R at 5–6.

In August 2012, Dr. Devarajan instituted an internal review of Plaintiff's clinical management following concerns expressed by Dr. Richard Koppel, the Director of the Regional Perinatal Center at Cohen Children's Medical Center. *Id.* An external review followed the internal review, with three practitioners at institutions unaffiliated with MMC and CHSLI reviewing Plaintiff's medical care. *Id.* at 6.

In September 2012, Plaintiff emailed Dr. Devarajan to request time off in February 2013. *Id.* Her email, in relevant part, reads: "I need vacation in February because my daughter is due to deliver her first baby and she will need me." Ex. T [DE 284-25] to Decl. of Justin A. Guilfoyle ("Guilfoyle Decl.") [DE 284-1]; *see* R&R at 5. The request was not granted. R&R at 5.

In November 2012, Plaintiff hired an attorney to help her get permission to take time off. *Id.* In December 2012, the neonatology department held meetings to address the concerns raised by those who reviewed Plaintiff's clinical management. *Id.* at 5–7. Later that month, on the same day—December 27, 2012—Plaintiff (i) received permission to take leave in February 2013 and (ii) was placed on a three-month Focused Practitioner Performance Evaluation ("FPPE") to further assess her clinical "skills or knowledge" and to "determine what additional steps, if any, were appropriate." *Id.*

Three months, however, did not suffice to generate enough data to evaluate Plaintiff, and MMC kept the FPPE ongoing. *Id.* During the FPPE review, Defendants continued to hold several "meetings with [Plaintiff] and memorialized the complaints and concerns raised [regarding Plaintiff], as well as meetings held, in written letters and notes to file." *Id.* at 7–8.

In June 2014, MMC held a Peer Review meeting at which it was "determined that [Plaintiff] failed to meet the appropriate standard of care." *Id.* at 8–9. MMC and CHSLI terminated Plaintiff on August 21, 2014 and summarily suspended her clinical privileges "as a result of her standard of care issues, unprofessionalism, lack

of respect, insubordination, failure to improve and failure to adhere to departmental policies, procedures and guidelines." *Id*. at 9.

## B. Procedural History

Plaintiff commenced this action on April 20, 2015. R&R at 11. On March 10, 2016, then-presiding District Court Judge Arthur D. Spatt granted Defendants' motion to dismiss, a decision which, on April 12, 2017, the Second Circuit affirmed except as to Plaintiff's Family Medical Leave Act ("FMLA") retaliation claim and the supplemental state law claims over which the Court declined to exercise jurisdiction. R&R at 11–13. Judge Spatt dismissed the state law claims on October 28, 2017, [DE 65], leaving only the FMLA retaliation cause of action.

On June 25, 2016, Judge Spatt sanctioned Plaintiff's counsel for his repeated failure to redact confidential information in his filings. [DE 47]. In October 2019, Judge Spatt warned Plaintiff's counsel "to exercise significantly more discretion regarding discovery motion practice" as a result of Plaintiff's numerous motions for sanctions and to strike – each premised upon Defendants' alleged spoliation and fraud on the court. [DE 175]. Since the warning, the docket reflects Plaintiff filed seven additional motions for sanctions, motions to strike, or motions to reconsider denials of same, including (i) a motion for sanctions filed not two months after Judge Spatt's warning, [DE 180], and (ii) two motions for sanctions filed within five days of each other, *see* [DE 259] (dated Dec. 1, 2020); [DE 264] (dated Dec. 6, 2020). United States District Court Judge Sandra J. Feuerstein, who presided over the matter between June 2020 and April 2021, and Magistrate Judge Locke, who presided over

the matter since its inception, each reminded Plaintiff's counsel of his obligation to follow Court orders and rules in his motion practice. Order dated Jan. 6, 2021 (Feuerstein, J.); R&R at 20 (Locke, M.J.).

The parties cross-moved for summary judgment on October 28, 2020. [DEs 283, 284]. Plaintiff moved to strike evidence in Defendants' summary judgment papers on November 30, 2020, [DE 258], and December 4, 2020, [DE 263]. Judge Feuerstein referred the motions for summary judgment and the motions to strike to Judge Locke on January 22, 2021. *See* Order dated Jan. 22, 2021. Judge Locke issued his R&R on May 11, 2021. [DE 304]. Judge Locke recommended granting Defendants' motion for summary judgment and denying Plaintiff's motion for summary judgment because "Plaintiff did not provide sufficient notice to Defendants that she was or may have been entitled to FMLA leave to visit her adult daughter." R&R at 23. Judge Locke further recommended denying Plaintiff's motions to strike because he "did not rely on any of the[] documents in reaching its conclusion on the arguments for summary judgment." *Id.* at 17.

Plaintiff objected to the R&R pursuant to Federal Rule of Civil Procedure 72 on May 18, 2021, [DE 305], and Defendants responded on June 1, 2021, [DE 308]. The matter was reassigned to the undersigned on June 2, 2021.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a *de novo* determination of any portion

of the magistrate judge's disposition to which specific written objection has been made.  Fed. R. Civ. P. 72(b).

## DISCUSSION

The Court addresses Plaintiff's objections in the order in which she presents them.

## I.   Fraud on the Court, Ipso Facto, as a Claimed Basis to Grant Summary Judgment to Plaintiff

Plaintiff objects to the R&R's failure to recommend the Court grant summary judgment to Plaintiff as a sanction for Defendants' submission and reliance on purportedly "forged, fabricated and altered documents."  Obj. at 8–9.  Judge Locke "decline[d] to address" her concerns because the documents related to the retaliatory intent prong of her FMLA claim – an issue he did not reach.  R&R at 26 n.4.  Plaintiff contends "the relevancy of the fraudulent materials" is "of no consequence" and the documents' falsity alone suffices as a basis to default Defendants.  Obj. at 9 (citing *Pope v. Fed. Exp. Corp.*, 974 F.2d 982 (8th Cir. 1992); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989); *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28 (D.C. 1986)). In that sense, Plaintiff says, Judge Locke erred in declining to analyze them.

"The submission of false documents is clearly sanctionable."  *Bravia Cap. Partners Inc. v. Fike*, 2015 WL 1332334, at *18 (S.D.N.Y. Mar. 25, 2015).  But fraud on the court "will not lie where the alleged misconduct merely consists of 'an advocate's view of the evidence, drawing all inferences favorable to [his client] and against the [adversary].'"  *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 407 (S.D.N.Y. 2010) (alterations in original) (quoting *Intelli–Check, Inc. v. TriCom Card*

*Techs., Inc.*, 2005 WL 3533153, at *12 (E.D.N.Y. Dec. 22, 2005)).  Plaintiff thus bears the heavy burden of proving, by "clear and convincing evidence," that Defendants perpetrated fraud on the court.  *Bravia Cap. Partners Inc.*, 2015 WL 1332334, at *3 (quoting *Passlogix, Inc.*, 708 F. Supp. 2d at 393).  Defendants have "no obligation here to 'disprove' fraud."  *Bullock v. Reckenwald*, 2016 WL 5793974, at *19 (S.D.N.Y. Aug. 24, 2016), *report and recommendation adopted*, 2016 WL 5719786 (S.D.N.Y. Sept. 30, 2016).

Clear and convincing evidence "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established" and "enable[s] the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."  *Funk v. Belneftekhim*, 2019 WL 7603139, at *3 (E.D.N.Y. Jan. 17, 2019) (Scanlon, M.J.) (internal quotation marks omitted) (quoting *Esposito v. Suffolk Cnty. Cmty. Coll.*, 2019 WL 1044099, at *2 (E.D.N.Y. Mar. 4, 2019)).  "In other words, the proof must be 'highly probable' and 'leave[] no substantial doubt.'" *Esposito*, 2019 WL 1044099, at *2 (alteration in original) (quoting *Waran v. Christie's Inc.*, 315 F. Supp. 3d 713, 718–19 (S.D.N.Y. 2018)).  Indeed, the Second Circuit has noted in passing that "[p]erjury and fabricated evidence are evils that can and should be exposed at trial."  *Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir. 1988) (parenthetically quoting *Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982)); *A.I.A. Holdings, S.A. v. Lehman Bros.*, 2002 WL 1271722, at *2 (S.D.N.Y. May 29, 2002) (finding no fraud on the court even though

"defendants have made some showing that the two documents submitted by plaintiffs in support of their motion for summary judgment may well have been doctored").

While Plaintiff objects to virtually every piece of evidence not in her favor as fraudulent, *see* R&R at 2–11, she specifically raised objections as to Exhibits II, PP, AA, SS, Z, X, HH to the Declaration of Justin A. Guilfoyle in Support of Defendants' Motion for Summary Judgment[2] and Exhibit H to the Declaration of Dr. Swarna Devarajan dated January 22, 2020,[3] Obj. at 8–9, 19, 21, 23.[4]  The Court analyzes each exhibit in the same order as they appear in Plaintiff's Objection.

The Court harbors substantial doubt that Defendants forged any of these exhibits and cannot find clear and convincing evidence of fraud.

A.    **Exhibit II**

Exhibit II is an October 28, 2013 typewritten note authored by Dr. Devarajan. Ex. II [DE 284-40] to Guilfoyle Decl.  Plaintiff correctly points out an inconsistency between that date and the dates listed in the body of the note.  Specifically, the note "details events that occurred over one month later"—on "11/25/2013" and "11/28/2013"—*i.e.*, events that had not yet transpired as of October 28, 2013.  Obj. at 10.  Plaintiff persuasively argues the events likely did not occur in November.  For

---

[2]    Exs. II, PP, AA, SS, Z, X, HH [DEs 284-40, -47, -32, -50, -31, -29, -39] to Guilfoyle Decl.

[3]    Ex. H [DE 187-8] to Decl. of Dr. Swarna Devarajan dated Jan. 22, 2020 ("Devarajan Sanctions Decl.") [DE 187]; *see also* Ex. 28 at 838–46 [DE 288] to Aff. of Ike Agwuegbo ("Agwuegbo Aff.") [DE 285-1].

[4]    While Plaintiff does not formally analyze Exhibits X, HH, and H in the same section as she does the others, she raises their allegedly fraudulent nature immediately thereafter.  *See* Obj. at 19, 21.

example, "11/28/2013" was Thanksgiving – a Thursday, and not a Monday as written in the note.  *Id.*  And, as Plaintiff's evidence reflects, Dr. Devarajan was not on-call in November 2013.  *See* Ex. 17 [DE 286-13] to Agwuegbo Aff.

Even so, the Court does not believe the note is fraudulent.  Like other courts have held, "inaccuracies about the date[s] . . . do not convince the Court that [a declarant] is lying." *E.g.*, *Passlogix*, 708 F. Supp. 2d at 402.  They may reflect honest mistakes.  For example, here, if the events occurred in October 2013, and Dr. Devarajan confused October for the eleventh month, everything lines up.  Defs. Reply in Support of Summary Judgment at 17 ("Defs. Reply") [DE 296-1].  October 28, 2013 was indeed a Monday.  A revised schedule in Plaintiff's evidence demonstrates Dr. Devarajan's on-call responsibility for October 2013.  *See* Ex. 17 at 0448 to Agwuegbo Aff.  And whether the events occurred in October or November 2013 does not materially impact the issues at bar, which further undermines an inference of fraud. *See* Obj. at 10.

**B.   Exhibit PP**

Exhibit PP is a December 19, 2013 letter on Mercy Medical Center letterhead from Dr. Devarajan to Plaintiff.  Ex. PP [DE 284-47] to Guilfoyle Decl.  Plaintiff deems it fraudulent for two reasons.  First, Dr. Devarajan "falsely claimed" in Exhibit PP that "she gave a letter to [Plaintiff] on June 15th, 2013," a Saturday, a day of the week on which the hospital has only one doctor on-call.  Obj. at 11.  Second, it is

"identical" to another document "dated December 20, 2013."[5]  *Id.*  Dr. Devarajan's declaration corroborates Plaintiff's reading; she avers "I did not present [Plaintiff] with a letter on June 15, 2013."  Devarajan Sanctions Decl. ¶¶ 19–21.

But Dr. Devarajan's mistake, without more, does not make fraud highly probable.  Dr. Devarajan owns up to her "inadvertent error."  *See id.*  She explains that she drafted a letter to Plaintiff on June 15, 2013, submitted it to the Human Resources Department, and ultimately delivered the letter on July 1, 2013.  *Id.*  In writing Exhibit PP, Dr. Devarajan "unintentionally and mistakenly" referenced the date of the first draft.  *Id.*; *see* Defs. Reply at 18–19.  Likewise, the differences between the December 19 and 20 letters are too minor to suggest fraud – the latter simply adds the word "previously" and the first and last names of certain doctors.  *Compare* Ex. PP to Guilfoyle Decl. *with* [DE 200] at 25 of 34.  "While there is evidence of multiple drafts of memoranda and incorrect dates on documents, none of those variances allow an inference of fraud."  *E.g.*, *Oliver v. New York State Police*, 2020 WL 1989180, at *50 n.53 (N.D.N.Y. Apr. 27, 2020).

The Court offers no opinion on Dr. Devarajan's credibility nor the weight her testimony and documentary evidence deserve.  But it should be noted that Defendants indicate, and Plaintiff does not dispute, that Plaintiff failed to take any depositions in the case, eschewing the opportunity to ask questions of Defendants and

---

[5]     The December 20, 2013 version can be viewed at Docket Entry 200, page 25 of 34.

their witnesses as to their documents' veracity.  Defs. 56.1 at 2 n.1.  Plaintiff has failed to establish that Exhibit PP is fraudulent under the attendant circumstances.

### C.     Exhibit AA

Exhibit AA is an email dated October 25, 2012 from Dr. Richard J. Schanler to Dr. Devarajan.  Ex. AA [DE 284-32] to Guilfoyle Decl.  Plaintiff traces fraud to Dr. Schanler's email address.  Dr. Schanler sent the email from "rschanle@nshs.edu" rather than "schlaner@nshs.edu" – the latter is (according to Plaintiff) his "correct email address" as shown in his signature block.  Obj. at 12.

Exhibit AA does not give the Court a firm conviction that fraudulent conduct occurred.  Plaintiff's argument stems from her experiences communicating with Dr. Schanler.  Decl. of Dr. Chinwe Offor ¶¶ 38–39 ("Offor Decl.") [DE 285-3].  She states, "I do not believe that Dr. Schanler wrote or sent [the email at Exhibit AA]. . . .  I have communicated several times with Dr. Schanler . . . .  Dr. Richard Schanler's correct [e]mail address is schanler@nshs.edu."  *Id.*  But that does not rule out Dr. Schanler having two email addresses, even if he communicated with Plaintiff solely through one.  Defs. Reply at 20.

The Court also takes *sua sponte* judicial notice of a neonatology textbook listing Dr. Richard J. Schanler,  with a "rschanle@nshs.edu" email address, as a contributor.  *See* Evidence-Based Handbook of Neonatology at xvii (William Oh, ed., 1st ed. 2011);[6]

---

[6]     World Scientific, the publisher of the Evidence-Based Handbook of Neonatology, makes a scan of the List of Contributors freely available online at its website:   https://www.worldscientific.com/doi/epdf/10.1142/9789814313476_fmatter (last accessed Sept. 1, 2021). So too does Amazon.com, via its "Look Inside" feature:

*see also* Defs. Reply at 20 ("[A] simple search on the Internet confirms that Dr. Schanler had more than one email address . . . ."). The judicial notice extends solely to the textbook's linking of Dr. Schanler's to the purportedly fake email address and not as to the truth of whether Dr. Schanler's email address was actually "rschanle@nshs.edu." *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 2006 WL 3771013, at *2 (S.D.N.Y. Dec. 18, 2006) ("The Court can . . . take judicial notice of the fact that [] advertisements were published in certain publications and on certain dates, but it cannot make factual inferences based on the content of those advertisements that it could not otherwise make pursuant to its power under Fed. R. Evid. 201 to take notice of widely known and indisputable facts."). Its mere existence—an unrelated third-party's publication, before this matter arose, of a book listing the false Dr. Schanler email address—leads the Court to disagree with Plaintiff's assessment of fraud.

### D. Exhibit SS

Exhibit SS is Dr. Devarajan's February 5, 2014 typewritten note memorializing a meeting called by Dr. Aaron Glatt. Ex. SS [DE 284-50] to Guilfoyle Decl. It is fabricated, says Plaintiff, because Dr. Glatt's email recounting the same meeting demonstrates he "never made the statements credited to him by Dr. Devarajan." Obj. at 12 (emphasis removed). Specifically, Dr. Glatt considered his statements "not specific but general in nature regarding appropriate direct verbal

---

https://www.amazon.com/Evidenced-Based-Handbook-Neonatology-William-Oh/dp/9814313467 (last accessed Sept. 1, 2021).

communication regarding patient care issues, how to address quality concern, chain of command, etc." Ex. 80 [DE 292-28] to Agwuegbo Aff. Dr. Devarajan, by contrast, wrote Dr. Glatt "stated the expectation that emails discussing patient information that are damaging must stop. He stated that any more such emails and he will take further action including suspension. He supports the Chair of the department. All quality concerns must be brought forth through Peer Review and PI process within the department." Ex. SS to Guilfoyle Decl.

In the Court's view, Dr. Glatt's and Dr. Devarajan's recollections are not irreconcilable. *See* Defs. Reply at 21. Perhaps Dr. Devarajan's notes reflect statements more "specific" than Dr. Glatt's characterization of the same would suggest. The divide between "general" and "specific" here is not great enough to indicate fraud.

### E.    Exhibit Z

Exhibit Z is a "MIDAS report"—a "Risk Management Worksheet" from CHSLI's electronic incident reporting system. Ex. Z [DE 284-31] to Guilfoyle Decl. The second page lists the "General Event Data" and a comment entry dated August 20, 2012. *Id.* The entry begins: "There have been multiple issues in the NICU of vent and HFOV mismanagement by Dr. Offor with many different staff members on both shifts." *Id.*

Plaintiff contends this document reflects Dr. Devarajan's "initial attempt" to allege clinical mismanagement against Plaintiff. Obj. at 13–15. The report is a forgery, Plaintiff argues, because (i) it fails to include Plaintiff's allegations of

mismanagement against Drs. Devarajan and Rayjada, (ii) Plaintiff was not working on August 20, 2012, (iii) a Pediatric Infectious Disease Specialist "endorsed [Plaintiff's] management of the baby," and (iv) the treatment plan "was made by that specialist and "followed and continued by all the other" doctors in the neonatal unit. *Id.* (citing Exs. 82, 83 [DEs 293-1, -2] of Agwuegbo Aff.).   Plaintiff also calls into question the report's timing – generated after Dr. Koppel raised concerns about Plaintiff's clinical management and not "when the alleged clinical mismanagement occurred."  *Id.*  Lastly, Plaintiff alleges Defendant's counsel lied to the Court at an April 23, 2020 conference by stating "such a document never existed."  *Id.*

The conflicting evidence in the record does not clearly and convincingly reveal fraud.  The basis for Plaintiff's objection here is Plaintiff's declaration dated January 6, 2021, from which the objections were copied verbatim.  *Compare* Offor Decl. ¶¶ 30–35, *with* Obj. at 13–15.  In any event, Plaintiff's objections "are an advocate's view of the evidence, drawing all inferences favorable to [her] and against [Defendants] in this action."  *See Intelli-Check, Inc.*, 2005 WL 3533153, at *12.  Her disagreement with the report's substance does not prove fraud.  For example, Plaintiff does not provide a foundation for why she believes the MIDAS report should contain her allegations against Drs. Devarajan and Rayjada.  She likewise fails to explain why the chronology of events is suspicious: Dr. Koppel expressed concern about Plaintiff to Dr. Devarajan, who then instituted the internal review that generated the MIDAS report.  Defs. 56.1 ¶¶ 65–66 (citing Decl. of Dr. Swarna Devarajan dated Oct. 28, 2020 ¶¶ 37–39 ("Devarajan SJ Decl.") [DE 284-3]).  If Plaintiff contends that MMC's course

of practice was to generate MIDAS reports at the time of the inciting events and never thereafter, she has offered insufficient proof in support.

The Court does not read the transcript of the April 23, 2020 conference as revealing lies perpetrated by Defense counsel. The conference addressed, *inter alia*, Plaintiff's Motion to Compel the MIDAS reports for Patients ## 1, 2, 3, 5, 11, 12, and 13.[7] *See* Tr. at 9:13–10:15, Ex. 48 [DE 290-3] to Agwuegbo Aff.; *see* Pl. Mot. to Compel at 2–3 [DE 196]. Defense counsel affirmed that MIDAS reports for these patients did not exist. Tr. at 9:13–10:15, Ex. 48 to Agwuegbo Aff.; Defs. Ltrs. dated Feb. 19 and 20, 2020, Ex. 31 [DE 289-2] to Agwuegbo Aff. Exhibit Z's MIDAS report, on the other hand, pertains to Patient # 4, whose reports Plaintiff did not move to compel.[8] *See* Defs. Reply at 20. Plaintiff herself recognizes as much. Obj. at 11 ("This Report [Exhibit Z] was generated in alleged connection to the treatment of Patient # 4."); *see* Pl.'s Counter Statement of Undisputed Material Facts ¶ 66 ("Pl. Counter 56.1") [DE 285-2]. As such, Defense counsel's representations at the April 23, 2020 conference do not prove Exhibit Z is fabricated.

**F.    Exhibit X**

Exhibit X is Dr. Devarajan's handwritten Neonatology Performance Improvement note dated August 15, 2012 regarding Plaintiff's management of a particular patient. Ex. X [DE 284-29] to Guilfoyle Decl. Plaintiff asserts "[n]o such

---

[7]    In this action, patients are identified by number to protect their personally identifiable information.

[8]    Defendants state they produced to Plaintiff this MIDAS Report in September 2018. Defs. Reply at 20.

meeting or counseling session occurred" because "there would have been at least [a] [MIDAS] Report or Sentinel Event Report made at the time." Obj. at 21. Further, as the note "memorializ[es] [] a [c]ounseling session," Plaintiff argues, Dr. Devarajan should have filled out a counseling report with both her and Plaintiff's signatures. *Id.* at 19.

The Court fails to find clear and convincing evidence of fraud in Exhibit X. Dr. Devarajan avers she prepared this handwritten note contemporaneously with her meeting with Plaintiff. Devarajan SJ Decl. ¶¶ 34–40. Plaintiff's characterization of this exhibit as a counseling memorandum follows from unsupported speculation: "Exhibit X looks like an attempt by Dr. Devarajan to provide a memorialization of a [c]ounseling session." Obj. at 19. Moreover, Dr. Devarajan states the incident *did* result in a MIDAS report – one dated August 20, 2012, *i.e.*, Exhibit Z. Devarajan SJ Decl. ¶ 38; *see supra* Discussion Section I.E.

## G.    Exhibit HH

Exhibit HH is a letter dated July 1, 2013 from Dr. Devarajan to Plaintiff with the subject "Unacceptable Behavior." Ex. HH [DE 284-39] to Guilfoyle Decl. Plaintiff asserts the underlying meeting at which Defendants allegedly gave her the letter never occurred and that Dr. Devarajan should have memorialized the letter in a counseling report with her and Plaintiff's signatures. Obj. at 21. This Objection fails to cite any record evidence, and thus fails to clearly and convincingly demonstrate fraud, as opposed to a Plaintiff-favorable view of the evidence. *Id.*; *see Intelli-Check,*

*Inc.*, 2005 WL 3533153, at *12.  Without evidence beyond Plaintiff's averments, the Court does not view Exhibit HH as proof of fraud on the Court.

### H.    Exhibit H

Defendants did not rely on Exhibit H in support of the at-issue summary judgment motion; instead, it was cited in their opposition to Plaintiff's Motion for Sanctions dated December 5, 2019.  Ex. H [DE 187-8] to Devarajan Sanctions Decl.; *see also* Ex. 28 at 838–46 Agwuegbo Aff. (attaching a copy of Defendants' sanctions opposition papers).  Exhibit H is the Neonatology Peer Review Committee Minutes dated June 17, 2014 for a meeting held "on Wednesday June 17, 2014."  Plaintiff states the document is fraudulent because June 17, 2014 was a Tuesday and because the minutes incorrectly "concluded that [Plaintiff's] clinical management failed to meet the Standard of Care."  Obj. at 23–24.  According to Plaintiff, the "truth could have easily been verified by the Court taking a look at Patient's Chart and Medical Record" exhibits among her papers.  *Id.*

Plaintiff is correct June 17, 2014 was a Tuesday.  That said, this mistake of one day is insufficient to render Exhibit H fraudulent.  *See, e.g.*, *Oliver*, 2020 WL 1989180, at *50 n.53.  And Plaintiff's reading of the medical record to discredit Exhibit H is closer to advocacy than proof of fraud.  *Passlogix, Inc.*, 708 F. Supp. 2d at 407.

As none of the exhibits amount to fraud on the Court, Plaintiff's objection to the R&R's failure to recommend the Court enter a default judgment against Defendants is overruled.  It bears repeating: Judge Locke correctly declined to

consider and to address these exhibits as they do not touch upon the issue of FMLA notice, which was the basis for his summary judgment recommendations.  R&R at 26 n.4.

## II.    The R&R's Recitation of Facts

Plaintiff objects to the R&R's Background and Relevant Facts sections as "ma[king] it seem as if the Plaintiff was being unreasonable in her request for vacation."  Obj. at 15.  To the extent this objection relies on Judge Locke's citation to allegedly "forged, fabricated and altered documents" or "expert reports," *id*. at 15, 19–20, it is overruled, *see supra* Discussion Section I (fabricated documents); *see infra* Discussion Section VI (expert reports).

At the outset, the Court notes that Plaintiff's failure to comply with Local Rule 56.1 led Judge Locke (i) to "decline to consider" Plaintiff's assertions "supported by citations to documents not contained within the record[] or that amount to legal arguments," (ii) to "admit[] only those facts in Defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record," and (iii) to "ignore[] any facts submitted in violation of Local Civil Rule 56.1."  *See* R&R at 2 n.1, 17–19.  Judge Locke did not abuse his discretion in doing so.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72–73 (2d Cir. 2001) (observing the court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules" in the context of Local Rule 56.1).  The Court here nonetheless endeavors to "conduct an assiduous review of the record," as if Plaintiff had complied with Local Rule 56.1.  *Id.*

Plaintiff disputes many facts unrelated to the issue on which the R&R recommended granting summary judgment to Defendants. Disputed immaterial facts do not create genuine questions sufficient to withstand summary judgment. *E.g.*, *Lilakos v. New York City*, 2018 WL 6242227, at *3 (E.D.N.Y. Nov. 29, 2018) ("But [the] objections . . . all dispute facts that are immaterial, rendering their consideration unnecessary for summary judgment purposes." (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986))). For example, (i) the availability of physician coverage, (ii) the date on which Defendants formalized a written vacation policy, (iii) whether the FPPE was justified, (iv) whether Plaintiff was justified in not seeking a pre-termination hearing or a post-termination appeal, and (v) the Office of Professional Medical Conduct's investigation, *see* Obj. at 15–16, 19–26, do not concern the FMLA notice issue dispositive on summary judgment, *see infra* Discussion Section IV.

Plaintiff does object to one pivotal fact – that Plaintiff "did not inform [Dr.] Devarajan of any then-current or anticipated health issues, disabilities or medical needs her daughter had, or any possibility that her daughter would not be able to care for herself after labor." Obj. at 16–19 (quoting R&R at 4–5). The full statement in the R&R reads:

> While Offor maintains her daughter suffered from serious health conditions during and after her pregnancy, and that Plaintiff was aware of them at the time she requested the vacation based on "oral[]" conversations, she did not inform Devarajan of any then-current or anticipated health issues, disabilities or medical needs her daughter had, or any possibility that her daughter would not be able to care for herself after labor, stating on September 28, 2012 only that she

"need[ed] the vacation in February [2013] because [her] second daughter [wa]s due to deliver her first baby and she will need [her]."

R&R at 4–5 (alterations in original).

It is indisputable that Plaintiff's September 28, 2012 email does not mention her daughter's health issues or inability to care for herself. *See* Email dated Sept. 28, 2012, Ex. T to Guilfoyle Decl. Accordingly, the Court understands Plaintiff to contend the R&R reads the email out of context, without reference to (a) her conversations with Dr. Devarajan in June 2012, in which she purportedly communicated her daughter's health issues and inability to care for herself or (b) her daughter's diagnosed conditions and her impairment therefrom. Obj. at 17. Plaintiff's objection is built upon an unsupported reading of the evidence contradicted by her own deposition testimony.

Plaintiff asserts that she "informed Dr. Devarajan in June 2012 . . . [that her daughter] was being investigated for Hodgkin's Lymphoma." Offor SJ Decl. ¶ 13. Yet at her deposition, Plaintiff testified it was "some form of *non*-Hodgkin's lymphoma." Tr. of Dec. 5, 2019 Deposition of Dr. Chinwe Offor at 119:25, 135:20–21, 136:7–8 ("Offor Dep. Tr.") (emphasis added), Ex. D [DE 284-9] to Guilfoyle Decl. Plaintiff also asserts she told Dr. Devarajan about her daughter's heart palpitations, heart murmur, and "unusually severe anemia." Offor SJ Decl. ¶ 13. But she testified she "didn't want to give [Dr. Devarajan] any more detail" other than that her daughter's lymph nodes had "enlarged" and "flared up." Offor Dep. Tr. at 120:9, 121:5–14. She reiterated: "That was as far as I went, and beyond that I didn't talk to [Dr. Devarajan]

about other details." *Id.* at 121:5–14.  That is, she affirmatively disavowed telling Dr.

Devarajan of the other conditions.[9]  *See id.*

She likewise testified she did not know, at the time she requested vacation in

June, whether the lymph node condition did, or could, incapacitate her daughter:

> Q.   Now, when you spoke with Dr. Devarajan, you spoke about something having to do with your daughter's lymph nodes?
>
> A.   I had told her about her lymph nodes because early in this pregnancy the lymph nodes flared up again.
>
> . . . .
>
> Q.   I'm talking about when you asked Dr. Devarajan for the --
>
> A.   That was only information I gave her about the lymph nodes and how they had flared up.
>
> Q.   And when you say they flared up, how did that impact or affect your daughter?
>
> A.   How do you mean?
>
> Q.   I mean, so they flared up.  What does that mean?
>
> A.   They became enlarged.  And she needed to be investigated for that.
>
> Q.   Did that prevent her from working?  Did that prevent her from doing things?  How did the flaring up of her lymph nodes affect her?
>
> A.   I don't know what you mean by affecting her, but when --
>
> Q.   Well, did it prevent her from doing anything?

---

[9]   Plaintiff's deposition testimony also suggests that she did not know of the other conditions until after her daughter gave birth.  *E.g.*, Offor Dep. Tr. at 217:3–8 (Q: "When did [your daughter] say she was anemic?"  A: "After she gave birth.  By the time I came back again."  Q: "Did she tell you at any point in time prior to her giving birth, that she was anemic?"  A: "I don't really remember.")

MR. AGWUEGBO:          Her daughter was sick.

A.     I have no idea about whether she was going to work or not going to work.  I just talked about the medical issues she had.

Q.     With Dr. Devarajan?

A.     In early pregnancy.  The issues with the lymph node enlargement.  That was as far as I went, and beyond that I didn't talk to her about other details because she kind of didn't believe me.  She told everyone that I was just trying to make trouble, that there was nothing wrong with my daughter.

> So once I got that information back, I didn't want to give her any more details about my daughter.

Offor Dep. Tr. at 118:9–14, 120:6–121:14.  Plaintiff provided Dr. Devarajan with no more detail than a "lymph node enlargement," a condition which (at the time) Plaintiff did not know had incapacitated, or could incapacitate, her daughter.  The R&R therefore accurately described the facts; as of September 2012, Plaintiff had not informed Dr. Devarajan that Plaintiff's daughter was unable, or "would not be able[,] to care for herself after labor."

Altogether, Plaintiff's objection—drawn from her summary judgment submissions, which include her declaration—contradicts her previous sworn testimony and fails to defeat summary judgment in Defendants' favor.  *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013).  "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."  *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, this would greatly

diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969).

Plaintiff also attacks the R&R's statement by citing evidence that Plaintiff's daughter was in fact so afflicted with anemia, recurring heart palpitations, and a cardiac murmur and was in fact "temporarily disabled after the birth of her baby." Obj. at 17. This argument does not address the thrust of the R&R's point: Defendants had no knowledge, in June or September 2012, of these conditions or that they could render Plaintiff's daughter incapable of self-care – conditions which (as discussed further *infra* Discussion Section IV) "may" have qualified Plaintiff for FMLA leave.

Accordingly, Plaintiff's objection to the Background and Relevant Facts section is overruled.

## III.   The Second Circuit's Ruling on Defendants' Motion to Dismiss

Plaintiff objects that the R&R "totally disregarded and discountenanced" the Second Circuit's decision earlier in the case, which held Plaintiff's Complaint "plausibly alleged" an FMLA retaliation claim. Obj. at 27; *see Offor v. Mercy Med. Ctr.*, 676 Fed. App'x 51, 54 (2d Cir. 2017). Plaintiff contends that, because the Second Circuit held her Complaint established "a prima facie case," she no longer has to establish it again to withstand summary judgment; the analysis should begin with Defendants' burden to "to provide non-retaliatory reasons for the adverse employment actions." Obj. at 27.

Plaintiff's position conflates the standard on a Rule 12(b)(6) motion to dismiss with that applicable here, a Rule 56 motion for summary judgment. "[I]t is quite

possible [for decisions on these motions] to reach the opposite result in the same case, depending on the applicable standard of review." *MacDonald v. Safir*, 206 F.3d 183, 190 (2d Cir. 2000); 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2713 (4th ed. 2021) ("The ruling on a motion to dismiss for failure to state a claim for relief is addressed solely to the sufficiency of the complaint and does not prevent summary judgment from subsequently being granted based on material outside the complaint.").

A Rule 12 motion requires a court to accept the allegations in the pleadings, but "a court in considering summary judgment may look behind the pleadings to facts developed during discovery." *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 554 (2d Cir. 1977). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment. For that reason, the denial of Defendants' Motion to Dismiss does not preclude the Court from granting Defendants' Motion for Summary Judgment—even if they are premised upon "identical arguments"— because the latter "clearly relies on matters outside of the pleadings, such as depositions, admissions and affidavits." *See Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 609 n.2 (S.D.N.Y. 2009). The summary judgment record here extends well beyond the pleadings: Plaintiff's eighty-plus exhibits amount to more than 2,500 pages; Defendants, for their part, rely on more than fifty total exhibits, depositions, and declarations. *See, e.g.*, Exs. to Agwuegbo Aff.; Exs. to Guilfoyle Decl.

Accordingly, the Second Circuit's decision at the pleadings stage did not bind Judge Locke in his analysis on summary judgment, and Plaintiff's objection is overruled.

## IV.    FMLA Notice Requirement

Plaintiff objects that Judge Locke misunderstands the FMLA and its related regulations because the R&R addressed Plaintiff's, and not Defendants', notice obligations.  Obj. at 28.  Plaintiff asserts an "employer must provide the employee notice of FMLA eligibility once the employer learns that the [employee's requested] leave may qualify as FMLA leave" and that Defendants "failed to provide [n]otice to the Plaintiff that her [l]eave [r]equest may be FMLA eligible."  *Id.* (emphasis removed).  Plaintiff's objection is lifted, verbatim, from the first paragraph on page 16 of her Memorandum in Opposition to Defendants' Motion for Summary Judgment. Pl. Opp. at 16 [DE 285].

Plaintiff is correct that the FMLA imposes a notice requirement upon Defendants.  But that requirement triggers only if the employer first has notice that an employee's "requested leave may qualify for FMLA protection."  R&R at 24–25 (emphasis removed) (citing *Coutard v. Mun. Credit Union*, 848 F.3d 102, 110–11 (2d Cir. 2017)).  The analysis properly begins with an inquiry into Defendants' knowledge – specifically, whether Defendants' knew or had reason to investigate whether Plaintiff's requested leave "may qualify" as FMLA leave.  *Id.*  As is relevant here, Plaintiff could qualify for FMLA leave only if her daughter "ha[d] a serious health condition," 29 U.S.C. § 2612(a)(1)(C), *and* her daughter, who was then over eighteen

years of age, was "incapable of self-care because of a mental or physical disability," *id.* § 2611(11)(B). Those "incapable of self-care" are unable to perform "daily activities." 29 C.F.R. § 825.113(b) (defining "incapacity").

The FMLA regulations provide examples of notice "sufficient to make the employer aware that the employee needs FMLA-qualifying leave." *Id.* § 825.302(c). According to one, sufficient information includes, "if the leave is for a family member, that the condition renders the family member unable to perform daily activities." *Id.* Because the example contemplates the situation at bar—viz., Plaintiff's request for FMLA leave to care for a family member (her daughter)—it provides a helpful rubric against which to measure the information Plaintiff provided to Defendants.

The record evidence does not reflect a *genuine* issue of fact here: Plaintiff's request for vacation time to be with her adult daughter, who "need[ed]" her for the birth of her grandchild, did not give Defendants knowledge or reason to inquire as to whether Plaintiff's daughter may have a serious health condition and may be incapable of self-care. Ex. T [DE 284-25] to Guilfoyle Decl. ("[M]y second daughter is due to deliver her first baby and she will need me."); *see* Devarajan SJ Decl. ¶¶ 18– 20, 29–30.

The Eleventh Circuit's decision in *Cruz v. Publix Super Markets, Inc.* is instructive. 428 F.3d 1379 (11th Cir. 2005). Cruz told her employer "that she believed her daughter was in labor and that her daughter needed her help due to her son-in-law's broken collarbone." *Id.* at 1384. Cruz also provided "a physician's letter convey[ing] that Cruz's daughter felt she needed Cruz to help her with delivery." *Id.*

The Eleventh Circuit held this information did not suffice to put her employer on notice that she may qualify for FMLA leave.  *Id.* at 1386.  Cruz failed disclose information beyond "her own belief . . . that her daughter needed her help as reasons for the leave," a fact from which her employer "could not reasonably be expected to conclude that her absence qualified for FMLA leave."  Instead, Cruz "merely expressed her desire to assist her adult daughter during the birth of her grandchild, a condition which the FMLA does not cover."  *Id.* at 1386; *see also Lyons v. Stephenson Cty.*, 2018 WL 2161940 (N.D. Ill. May 10, 2018); *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 66 (D.D.C. 2011) (granting summary judgment to defendant where plaintiff "told his manager that he 'needed some time off to help his mom'" because "plaintiff does not indicate whether he even told his manager . . . that the extent of her illness rendered her unable to perform daily activities").

As noted earlier, Plaintiff's summary judgment submissions do not reconcile with her sworn testimony.  *See supra* Discussion Section II.  Her subsequent, contradictory assertions cannot defeat summary judgment in Defendants' favor.  *E.g.*, *In re Fosamax Prod. Liab. Litig.*, 707 F.3d at 193.  In a similar vein, when Plaintiff supports her declaration with citations to her daughter's medical charts, she is not addressing whether she in fact alerted Defendants to her daughter's conditions at the time she requested vacation time.  The same is true as to Plaintiff's assertion that her daughter was in fact incapacitated following her pregnancy – it does not address Defendants' knowledge at the time of Plaintiff's leave request.

All this to say, Plaintiff has not provided evidence from which a reasonable juror could find that Plaintiff met her predicate FMLA notice obligation, giving Defendants knowledge that, or a reason to inquire whether, her leave request may be FMLA eligible.[10]

---

[10]    Even assuming Plaintiff gave sufficient FMLA notice, she fails to offer proof sufficient to withstand summary judgment on the fourth element of her prima facie case: whether "the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012); *see* R&R at 26 (remarking, in passing, "there are no circumstances giving rise to an inference of unlawful retaliatory intent"). This element, while not analyzed in depth by Judge Locke, was fully briefed in the summary judgment papers. *E.g.*, Pl. Mem. at 14–15; Def. Opp. at 16–17; Def. Mem. at 17–19; Pl. Opp. at 19–20.

Throughout this litigation, Plaintiff has relied solely on temporal proximity to raise the inference of retaliatory intent – namely, the time between her retention of an attorney "to assist her in getting leave to be with her daughter" and Defendants "put[ting] her on" FPPE review. Obj. at 6–7; Pl. Counter 56.1 ¶¶ 91–92; Pl. Mem. in Supp. at 7–8, 15 ("Pl. Mem.") [DE 283-18]; Pl. Opp. at 5–6, 8, 18–19. Indeed, the Second Circuit vacated the district court's dismissal of Plaintiff's FMLA retaliation claim because her pleaded allegations regarding that "temporal proximity [were] enough *at th[at] stage* to give rise to an inference of retaliatory intent." *Offor*, 676 Fed. App'x at *54 (emphasis added).

In her summary judgment submissions, Plaintiff cites no evidence and rests solely, again, on this temporal proximity. Pl. Mem. at 14–15; Pl. Opp. at 8, 18. She contends "[t]here was no other causal event between [Plaintiff's] hiring of an [a]ttorney to help with her FMLA request and her placement on FPPE by MMC." Pl. Mem. at 15.

Plaintiff overlooks the extensive investigatory and disciplinary actions Defendants took before she retained her attorney in November 2012. Offor Dep. Tr. at 151:24–152:9. In August 14, 2021, Dr. Koppel—a doctor unaffiliated with MMC and CHSLI—raised concerns about Plaintiff's clinical management. Devarajan SJ Decl. ¶¶ 34–35; Exs. X, Y to Guilfoyle Decl.* The very next day, August 15, 2012, Dr. Devarajan met with Plaintiff to discuss these issues; the Defendants began an internal review shortly thereafter. Devarajan SJ Decl. ¶¶ 36–27; Ex. X to Guilfoyle Decl. Five days later, on August 20, 2012, the internal review generated the MIDAS report, which noted "multiple issues in the NICU of . . . mismanagement by [Plaintiff] with many different staff members on both shifts." Devarajan SJ Decl. ¶¶ 38-39; Ex. Z to Guilfoyle Decl. Four days after that, on August 24, 2012, Dr. John Reilly met with Plaintiff to "discuss the significant issues set forth in the MIDAS report."

V.    **Entry of the R&R Without a Presiding District Court Judge**

Plaintiff objects that District Court Judge Sandra J. Feuerstein's passing renders the R&R a "nullity." Obj. at 8, 28–29. Plaintiff's argument comes without citation to legal authority. *See id.*; *see* Defs. Resp. at 3 [DE 308]. The Court cannot entertain her argument in the absence of such support; Plaintiff's position is unintuitive and the issue appears to be one of first impression.

Even though it has no obligation to investigate further, the Court's independent research suggests a report and recommendation may issue without a district court judge assigned to the case. *E.g.*, *Laws v. Obert*, 2016 WL 5395943, at *3 (E.D. Cal. Sept. 26, 2016) (Barnes, M.J.) ("For the reasons set forth above, it is

---

Declaration of Dr. John P. Reilly ¶ 6 ("Reilly Decl.") [DE 284-4]. MMC then began an external review, requiring the assistance of multiple unaffiliated doctors, who provided their assessment in (i) a two-hour call on October 5, 2012, (ii) a written report dated October 12, 2012, and (iii) a written report dated October 26, 2012. Devarajan SJ Decl. ¶¶ 43–51; Reilly Decl. ¶¶ 8–10; Exs. Y, AA, BB to Guilfoyle Decl. Only after, in November 2012, did Plaintiff hire her attorney. Offor Dep. Tr. at 151:24–152:9.

"Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001). The Second Circuit has continually affirmed grants of summary judgment to defendants on this basis. *Perez v. City of New York*, 43 Fed. App'x 406 (2d Cir. 2021); *Frantti v. New York*, 850 Fed. App'x 17 (2d Cir. 2021); *Porter v. Potter*, 366 Fed. App'x 195, 197 (2d Cir. 2010) ("Adverse employment actions that are part of an 'extensive period of progressive discipline' that begins prior to any protected activity on the plaintiff's part cannot give rise to an inference of retaliation sufficient to make out a prima facie case.").

The fourth prong of Plaintiff's prima facie case is therefore an additional, independent basis on which to grant summary judgment to Defendants.

*     Plaintiff's challenges to Exhibits X, Y, Z, AA, and BB, for reasons stated elsewhere in this Order, are overruled. *See supra* Discussion Sections I.C, I.E, I.F; *see infra* Discussion Section VI.

hereby ordered that the clerk randomly assign a district judge to this case and recommended that defendant's motion to dismiss be granted and that this case be dismissed without prejudice." (capitalization omitted)), *report and recommendation adopted*, Order dated Nov. 30, 2016 [DE 51], *Laws v. Obert*, No. 2:14-cv-01466 (E.D. Cal.); *Jenkins v. Sw. Gas Corp.*, 2010 WL 1194486, at *1 (D. Ariz. Mar. 22, 2010) ("On October 5, 2009, Magistrate Judge Guerin issued her Report and Recommendation as to Defendants' motion to dismiss, and, because the parties had not yet consented to the jurisdiction of the Magistrate, review of the R&R was randomly assigned to Chief Judge [John] Roll."), *adopting* 2009 WL 6302956 (D. Ariz. Oct. 5, 2009) (Guerin, M.J.). The Court is unaware of any authority suggesting that a district court judge's untimely passing nullifies her referrals to a magistrate judge or revokes the magistrate judge's authority to enter a report and recommendation.

The Court declines to grant Plaintiff any relief on this basis and overrules her objection.

## VI. Motion to Strike

Plaintiff contends Judge Locke erred in three respects when he recommended denying her Motion to Strike. Obj. at 19–20, 29. Plaintiff challenges Exhibits AA, AAA, BB, Y and VV, [DEs 284-32, -58, -33, -30, -53], arguing (1) the evidence is inadmissible "hearsay upon hearsay"; (2) it reflects "expert reports" without any corresponding "information regarding the background of the author," "the basis of [his or her] knowledge," and "materials referred to in arriving at scientific or clinical conclusions"; and (3) the parties did exchange expert reports, contrary to Judge

Locke's statement otherwise, because she "sent to the Defendants an Expert Report on her damages." *Id.*; *see* R&R at 17.

First, and similar to his judicious choice not to consider the allegedly fraudulent exhibits, Judge Locke "d[id] not rely on any of these documents in reaching [his] conclusion on the arguments for summary judgment." R&R at 17. Indeed, the R&R cites none of these exhibits while discussing the merits of Plaintiff's FMLA claim. *See* R&R at 20–27. Judge Locke correctly did not consider these exhibits and did not admit them into evidence. Plaintiff's objection that it is "hearsay upon hearsay" is overruled. Obj. at 20.[11]

Second, Plaintiff's "expert report" objection mirrors an argument Judge Locke rejected. *Compare* Obj. at 29, *with* Pl. Opp. at 12 (incorporating Ltr. Mot. to Strike dated November 30, 2020 [DE 258]). Plaintiff has not explained *why* these exhibits are "expert reports," and she cites no case law to support her view. Even though the doctors authoring these exhibits have "specialized knowledge, or that [they] carried out [an] investigation because of that knowledge," Federal Rule of Evidence 701 does not preclude their testimony,[12] "so long as the testimony [would be] based on the investigation and [would] reflect[] [their] investigatory findings and conclusions, and

---

[11]    Exhibit Y is attached to and relied upon in Plaintiff's Complaint, which is an additional reason to overrule Plaintiff's hearsay objection thereto. Compl. ¶ 40 [DE 1]; Ex. 10(A) [DE 1-11] to Compl.; *cf. Utica Mut. Ins. Co. v. Munich Reins. Am., Inc.*, 594 Fed. App'x 700, 702 (2d Cir. 2014) (rejecting evidentiary challenge to a document relied upon at summary judgment because plaintiff "attached the [document] to its complaint and did not raise questions as to its authenticity until faced with [defendant's] summary judgment motion").

[12]    Assuming Defendants intended to call them at trial, as Plaintiff did not take their depositions and their reports are unsworn.

was not rooted exclusively in [their] expertise in" the medical field. *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004). These reports are admissible "because [they] w[ere] based on [their] *perceptions*." *Id.* (emphasis in original). And, further, Federal Rule of Civil Procedure 26(a)(2)(B)'s expert witness disclosure obligations trigger "not [from] the status of the witness, but, rather, the essence of the proffered testimony. Accordingly, a party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events." *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 112–14 (1st Cir. 2003) (deeming "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven" was not subject to Federal Rule of Civil Procedure 26(a)(2) expert disclosures).

Third, and ostensibly contending that Judge Locke's wrongly denied her Motion to Strike, Plaintiff argues that, "[c]ontrary to the assertion in the [R&R] that there were no Expert Reports exchanged, the Plaintiff sent to the Defendants an Expert Report on her damages." Obj. at 29. It seems that Judge Locke overlooked Plaintiff's Exhibit 66. *See* Report of Economic Loss Resulting from the FMLA Retaliation Claim of Dr. Chinwe Offor by David Gouiran, Ex. 66 to Agwuegbo Aff. Even so, his error is harmless. Plaintiff's retention of Mr. Gourian has no relation to the merits of Plaintiff's Motion to Strike; it is inconsequential. Defs. Resp. at 6 n.2.

Plaintiff's objections to Judge Locke's recommendation to deny her Motion to Strike are overruled.

## VII.   Failure to Cite Evidence in the Record in Drafting the 56.1 Statement

At Page 2 footnote 1, Judge Locke wrote: "Plaintiff's 56.1 Statement and 56.1 Counterstatement contain cites to evidence not in the record in some instances. The Court ignores any facts submitted in violation of Local Civil Rule 56.1." R&R at 2 n.1. Plaintiff objects that Judge Locke "misrepresented the facts" because "he failed to provide any example of the Plaintiff's failure." Obj. at 29–30.

At Page 19, Judge Locke provided six examples in "[b]oth Plaintiff's Rule 56.1 Statement and Counterstatement [that] contain factual assertions supported by citations to documents not contained within the record, or that amount to legal arguments." R&R at 19 (citing, by way of example, Pl. 56.1 ¶¶ 1, 3, 4, 6, 9, 11). Plaintiff has not identified which factual assertions, if any, concerning the FMLA notice issue were ignored by Judge Locke. Notwithstanding her failure, the Court's *de novo* review of the record reveals no genuine dispute on the material facts pertinent to this dispositive issue. *See supra* Discussion Sections II, IV. Plaintiff's objection is overruled.

## CONCLUSION

For the reasons discussed above, Plaintiff's objections are overruled, and Judge Locke's R&R is adopted in full. Plaintiff's Motion to Strike and Motion for Summary Judgment are both denied and Defendants' Motion for Summary Judgment is granted. The Clerk of Court is respectfully directed to enter judgment accordingly and to terminate the action.

**SO ORDERED.**

Dated: Central Islip, New York          s/ Denis R. Hurley
      September 1, 2021               Denis R. Hurley
                                    United States District Judge